IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THE NORTH FACE APPAREL CORP.<br><br>and<br><br>VF OUTDOOR, INC.<br><br>Plaintiffs,<br><br>v.<br><br>EYAL ALLEN DAHAN, Individually and d/b/a CAVALIER, CAVALIER SPORTSWEAR, CAVALIER APPAREL, CAVALIER CLOSEOUTS, and LE CAVALIER JEANS & SPORTSWEAR;<br><br>JASON DAHAN, Individually and d/b/a CAVALIER, CAVALIER SPORTSWEAR, CAVALIER APPAREL, CAVALIER CLOSEOUTS, and LE CAVALIER JEANS & SPORTSWEAR;<br><br>CAVALIER SPORTSWEAR, INC., a California corporation;<br><br>CAVALIER CLOSEOUTS, INC., a California corporation, d/b/a CAVALIER, INC., CAVALIER SPORTS, INC., and CAVALIER APPAREL, INC.;<br><br>and<br><br>JOHN DOES 1-10<br><br>Defendants | Civil Action No. 1:13-cv-00257<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs The North Face Apparel Corporation ("TAC") and VF Outdoor, Inc. ("VF

Outdoor") (TAC and VF Outdoor being referred to collectively herein as "Plaintiffs" or

1

"The North Face"), by and through their undersigned counsel, complain against Defendant Eyal Allen Dahan, individually and doing business as Cavalier, Cavalier Sportswear, Cavalier Apparel, Cavalier Closeouts, and/or Le Cavalier Jeans & Sportswear; Defendant Jason Dahan, individually and doing business as Cavalier, Cavalier Sportswear, Cavalier Apparel, Cavalier Closeouts, and/or Le Cavalier Jeans & Sportswear; Defendant Cavalier Sportswear, Inc., a California business corporation; Defendant Cavalier Closeouts, Inc., a California business corporation, also doing business as Cavalier, Inc., Cavalier Sports, Inc., and Cavalier Apparel, Inc.; and John Does 1-10, Individuals (all of the foregoing being referred to collectively herein as "Defendants") as follows:

## NATURE OF THE ACTION

1. This is an action for trademark infringement, trademark counterfeiting, trademark dilution, and false designation of origin and unfair competition under the Lanham Act (15 U.S.C. § 1051 *et seq.*). Plaintiffs are the owner of trademark and other intellectual property rights associated with their The North Face® Brand. As set forth more fully herein, Defendants have engaged in the trafficking of counterfeit goods in violation of federal law, damaging Plaintiffs and damaging the value of Plaintiffs' trademark rights.

## THE PARTIES

2. Plaintiff TAC is a corporation duly organized and existing under the laws of the State of Delaware, with a corporate address of 3411 Silverside Road, Wilmington, Delaware 19810. TAC, through its affiliates and licensees, manufactures, markets, distributes,

and sells various types of outdoor apparel, outerwear, equipment, and accessories, including fleece jackets and other products for which it is known worldwide.

3.     Plaintiff VF Outdoor is a corporation duly organized and existing under the laws of the State of Delaware, with a corporate address of 2701 Harbor Bay Parkway, Alameda, California 94502, and with business operations throughout the United States including in Greensboro, North Carolina. In conjunction with TAC, VF Outdoor manufactures, markets, distributes, and sells various types of outdoor apparel, outerwear, equipment, and accessories, including fleece jackets and other products for which it is known worldwide.

4.     Upon information and belief, Defendant Eyal Allen Dahan ("Allen Dahan") is a citizen of California, residing at 109 North La Jolla Avenue, Los Angeles, California 90048 and with a place of business at 431 East 16th Street, Los Angeles, CA 90015, who is and has been doing business in his individual capacity, and/or under the assumed name of, in concert with, or as the owner, manager or agent of, *inter alia*, Cavalier, Cavalier Sportswear, Cavalier Apparel, Cavalier Closeouts, and Le Cavalier Jeans & Sportswear. Allen Dahan is individually liable for the infringing activities described herein.

5.     Upon information and belief, Defendant Jason Dahan ("Jason Dahan") is a citizen of California, with a place of business at 431 East 16th Street, Los Angeles, CA 90015, who is and has been doing business in his individual capacity, and/or under the assumed name of, in concert with, or as the owner, manager or agent of, *inter alia*, Cavalier, Cavalier

7645925

Sportswear, Cavalier Apparel, Cavalier Closeouts, and Le Cavalier Jeans & Sportswear. Jason Dahan is individually liable for the infringing activities described herein.

6.     Upon information and belief, Cavalier Sportswear, Inc. is a California corporation with its principal place of business at 431 East 16th Street, Los Angeles, California, 90015, and having the following agent for service of process listed in the records of the California Secretary of State:  Eyal Dahan, 109 North La Jolla Avenue, Los Angeles, California 90048. Upon information and belief, Cavalier Sportswear, Inc. is engaged in, *inter alia*, the manufacture, import and sale for profit of various types of name-brand apparel at significantly discounted prices.

7.     Upon information and belief, Cavalier Closeouts, Inc. is a California corporation with its principal place of business at 431 East 16th Street, Los Angeles, California, 90015, and having the following agent for service of process listed in the records of the California Secretary of State: Allen Eyal Dahan, 431 East 16th Street, Los Angeles, California, 90015. Upon information and belief, Cavalier Closeouts, Inc., also doing business as Cavalier, Inc., Cavalier Sports, Inc., and Cavalier Apparel, Inc.,  is engaged in, *inter alia*, the manufacture, import and sale for profit of various types of name-brand apparel at wholesale or significantly discounted prices.

8.     Upon information and belief, Defendants Allen Dahan, Jason Dahan, Cavalier Sportswear, Inc., and Cavalier Closeouts, Inc. are engaged in business together with each other and with and under the fictitious names of Cavalier, Cavalier Sportswear, Cavalier Apparel, Cavalier Closeouts, and Le Cavalier Jeans & Sportswear, all of such named

4

defendants and associated fictitious names being referred to herein collectively as the "Defendants." Each of Defendants are jointly and severally liable for the tortious and infringing conduct alleged herein.

9.      Upon information and belief, Allen Dahan is an owner, manager, principal, agent and/or officer of one or more of the Defendants, and personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of the Defendants that are alleged herein.

10.      Upon information and belief, Defendants have filed or have caused to be filed with the County Clerk of the County of Los Angeles documents entitled Fictitious Name Statements, which show that Defendants are and have been operating businesses under the fictitious names of Cavalier, Inc., Cavalier Sports, Inc., and Cavalier Apparel, Inc. True and correct copies of the Fictitious Name Statements filed by or on behalf of Defendants are attached hereto as **Exhibit A**.

11.      Upon information and belief, Jason Dahan is an owner, manager, principal, agent and/or officer of one or more of the Defendants, and personally aided, abetted, participated in, authorized and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of Defendants that are complained of herein.

12.      Upon information and belief, and based on documents and information previously provided to Plaintiffs by Allen Dahan, the counterfeit goods at issue in this action were purportedly procured by Allen Dahan's brother, Jason Dahan, for resale and

7645925

distribution by Defendants. True and correct copies of Defendants' purported purchase records of the Infringing Products are attached hereto as **Exhibit B**.

13.    Upon information and belief, Defendants John Does 1 through 10 are individuals or entities involved or engaged in the wrongdoing alleged herein.

14.    Plaintiffs are unaware of the names and true capacities of the Defendants named herein as John Does 1 through 10, whether individual, corporate and/or partnership entities, and therefore sues them by their fictitious names. Plaintiffs will seek leave to amend this Complaint as the names and true capacities of the John Doe Defendants are determined.

## JURISDICTION AND VENUE

15.    This action arises under the Lanham Act, Title 15 of the U.S. Code, Section 1051 *et seq.*, and jurisdiction over the parties and subject matter of this action is proper in this Court pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338 (actions arising under an Act of Congress relating to trademarks).

16.    This Court has personal jurisdiction over Defendants because Defendants have purposefully directed their unlawful and damaging commercial activity into the State of North Carolina and into this judicial district, and because Defendants unlawful commercial activity has damaged Plaintiffs in this judicial district. This Court has personal jurisdiction over the Defendants under at least N.C. GEN. STAT. § 1-75.4 in that, upon information and belief, Defendants have purposefully directed substantial commercial activity into North Carolina and into this judicial district. As alleged more fully herein, Defendants have offered

7645925

for sale and have sold counterfeit products for distribution to and resale in stores in this judicial district and across the State of North Carolina, including in Winston-Salem, Greensboro, Burlington, Asheville, Raleigh, Hickory, and Fayetteville, North Carolina, where such counterfeit products were subsequently purchased by North Carolina consumers. In addition, since at least 2004, Defendants have routinely sold and shipped heavily discounted name brand apparel to customers and retailers in the State of North Carolina.

17.     Upon information and belief, Defendants acted with actual knowledge and deliberate intention to separately pack, ship, and invoice hundreds of products sold to Hamrick's, Inc. for specific distribution to and resale in seven major metropolitan markets in North Carolina.

18.     Upon further information and belief, Defendants have purposefully advertised, sold and distributed numerous infringing and counterfeit items into the stream of commerce in the United States with the reasonable belief and expectation that such products would periodically and regularly flow into North Carolina and into this judicial district.

19.     The sale, distribution, and shipment of Defendants' Infringing Products for sale into this judicial district have caused damage to Plaintiffs that arises in this district.

20.     Defendant Allen Dahan has further directed his actions and purposefully availed himself of the laws of this jurisdiction by transmitting various communications and documents into this judicial district related to the unlawful activities described herein.

21.     Pursuant to 28 U.S.C. § 1391, the United States District Court for the Middle District of North Carolina is the appropriate venue for this action, because (1) the claims at

7645925

issue in this litigation arose in this district as a result of Defendants purposeful sale of Infringing Products directed to retail stores and consumers in this judicial district, causing Plaintiffs to lose sales in this judicial district and causing other such damage and injury to Plaintiffs, their brand, and their valuable intellectual property rights, and (2) because Defendants are subject to personal jurisdiction in this district.

FACTUAL ALLEGATIONS

A.    <u>The North Face Trademarks</u>

22.    Since 1968, The North Face has been and continues to be a leading producer of high-quality outdoor apparel, outerwear, recreational equipment, and accessories, including fleece jackets, all of which are exclusively manufactured for Plaintiffs and are advertised, marketed, and sold under a variety of legally-protected trade names, trademarks, trade dresses, and copyrighted design elements, including but not limited to those detailed in this Complaint.

23.    TAC is the owner of the entire right, title and interest in and to, and VF Outdoor is the authorized licensee of, *inter alia*, the following United States Federal Trademark Registrations (hereinafter collectively referred to as the "The North Face Registered Trademarks"):

| Registration Number | Trademark Image | Classes of Goods | Registration Date |
|---|---|---|---|
| **Registration No. 983,624** | THE NORTH FACE | Classes 022, 025, and 028 for *inter alia* camping clothing, namely, rainwear, parkas, vests, trousers, shoes, gloves and headgear. | May 14, 1974 |

8

| | | | |
|---|---|---|---|
| **Registration No. 2,097,715** |  | Classes 018, 020, 022, and 025 for *inter alia* clothing, namely, parkas, vests, jackets, anoraks, pants, ski bibs, gloves, mittens, underwear, hats, headbands, caps, ski suits, gaiters, shorts, shirts and belts. | Sep. 16, 1997 |
| **Registration No. 3,538,773** |  | Classes 009, 018, 020, 021, 022, 025, and 035 for *inter alia* clothing, namely, shirts, tops, sweatshirts, vests, parkas, anoraks, coats, jackets, wind-resistant jackets, jacket hoods, pullovers, and sweaters; outerwear, namely, shells, ski wear, ski vests, ski jackets, and snowboard wear. | Nov. 25, 2008 |
| **Registration No. 1,030,071** |  | Classes 018, 020, 022, and 025 for *inter alia* camping clothing, namely, rainwear, parkas, vests, trousers, shoes, gloves, headgear and snowshoes. | Jan. 13, 1976 |
| **Registration No. 2,897,197** |  | Classes 018, 020, 022, and 025 for *inter alia* clothing, namely, t-shirts, tops, shorts, sweatshirt, sweaters, pants, jackets, vests, anoraks, ski suits, ski jackets, ski vests, rain jackets, and rain pants, footwear and headwear. | Oct. 26, 2004 |
| **Registration No. 3,294,604** |  | Class 035 for *inter alia* distributorship services in the fields of camping and outdoor gear, books, food, hardware and sports equipment. | Sep. 18, 2007 |

24.     Attached to this complaint as **Exhibit C** are true and correct copies of printouts of Registration Certificates obtained from the United States Patent and Trademark Office ("USPTO") website evidencing the ownership of these trademarks. The North Face Registered Trademarks are all valid, subsisting, unrevoked, uncancelled and enforceable.

7645925

25. The Registration Certificates attached hereto in Exhibit C constitute prima facie evidence of (i) the validity of The North Face Registered Trademarks and (ii) Plaintiffs' exclusive right to use those marks in connection with the goods identified therein.

26. Five of the six The North Face Registered Trademarks are incontestable pursuant to 15 U.S.C. § 1065.

27. The registration of The North Face Registered Trademarks provides legal and sufficient notice to Defendants of Plaintiffs' ownership and exclusive rights in those marks.

28. Plaintiffs' continuous and worldwide use of The North Face Registered Trademarks has enabled Plaintiffs to achieve world-wide celebrity under its trademarks in the outdoor performance apparel, casual apparel, outdoor recreational equipment, and footwear markets.

29. Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting The North Face Registered Trademarks. As a result, products bearing The North Face Registered Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high quality products sourced from Plaintiffs, and The North Face Registered Trademarks are inherently distinctive. Plaintiffs' products have also become among the most popular in the world.

30. The North Face Registered Trademarks have been continuously used since the date of first use and have never been abandoned.

31. Plaintiffs maintain rigorous quality control standards for all of their The North Face® products. All genuine The North Face® products, including those using The North

Face Registered Trademarks, are manufactured, distributed, and sold through a worldwide network of authorized manufacturers, licensees, distributors, and retailers. Plaintiffs also sell genuine The North Face® products, including their iconic Denali jacket, in corporate-owned retail stores and on the internet at www.thenorthface.com.

32.     The North Face Registered Trademarks have been widely promoted, both in the United States and throughout the world, and are among the world's most famous and widely recognized. Each of The North Face Registered Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). Consumers, potential consumers and other members of the public and outdoor products industry associate Plaintiffs' products with exceptional materials, style, and workmanship, and that Plaintiffs' products originate exclusively with The North Face as a direct result of the fame and goodwill associated with The North Face Registered Trademarks.

33.     The North Face Registered Trademarks are featured prominently in the marketing, advertising, and promotion of Plaintiffs' products. Hundreds of millions of dollars has been spent in advertising and promoting Plaintiffs' products over the last five years, which prominently feature The North Face Registered Trademarks. Plaintiffs' products bearing The North Face Registered Trademarks have generated several billions of dollars in sales over the last five years. The North Face Registered Trademarks are highly distinctive worldwide symbols of product quality that are uniquely associated with Plaintiffs.

7645925

**B.** **Defendants' Infringing Activities and Unlawful Conduct.**

34.     Upon information and belief, Defendants are engaged in advertising, promoting, importing, distributing, selling, and/or offering for sale products bearing logos and source-identifying indicia and design elements that are studied imitations of, identical to, or substantially indistinguishable from Plaintiffs' genuine products and The North Face Registered Trademarks (referred to herein as the "Infringing Products").

35.     Upon information and belief, Defendants, collectively and through their joint actions involving some or all of the several entities and individuals named herein, as well as as-yet-unnamed John Does 1-10, are responsible for the illicit sale of at least 15,966 fleece jackets bearing counterfeit reproductions of The North Face Registered Trademarks. The suggested retail value of the same quantity of Plaintiffs' genuine merchandise is approximately $2,634,390.00.

36.     Upon information and belief, at some point prior to May of 2012, Defendants obtained at least 15,966 Infringing Products in the form of fleece jackets bearing counterfeit reproductions and spurious designations identical to or substantially indistinguishable from The North Face Registered Trademarks (the "Counterfeit Marks").

37.     Upon information and belief, Defendants are well aware of the extraordinary fame and strength of The North Face® brand, The North Face Registered Trademarks, and the incalculable goodwill associated therewith.

38.     Upon information and belief, at the time Defendants solicited and obtained the Infringing Products, Defendants were aware of the unlawful and counterfeit nature of

7645925

the Infringing Products, or alternatively Defendants were aware of a high probability of the counterfeit nature of the Infringing Products and Defendants purposefully contrived to avoid learning of such counterfeit nature.

39.    Upon information and belief, each of the Infringing Products contained counterfeit reproductions of one or more of The North Face Registered Trademarks, which appeared on embroidered logos, garment tags, hang tags, and labels. Specifically, Defendants' Infringing Products incorporate counterfeit designations that are identical to or substantially indistinguishable from each of the five The North Face Registered Trademarks.

40.    Photographic examples of Defendants use of the Counterfeit Marks are displayed in the table below, taken from one of Defendants' Infringing Products purchased at the Hamrick's store location in Winston-Salem, North Carolina:

 

7645925



41. Defendants proceeded to sell the Infringing Products to several major retailers and distributors with store locations and customers in 26 states, specifically including seven stores in North Carolina located in the cities of Winston-Salem, Greensboro, Burlington, Hickory, Asheville, Raleigh, and Fayetteville.

42. Defendants sold at least 15,966 Infringing Products at a wholesale cost of between $11.95 and $15.00 per item, resulting in revenue to Defendants of at least $204,963.00. True and correct copies of invoices of Defendants' sales of Infringing Products to Hamrick's, Inc. ("Hamrick's"), Factory Connection LLC ("Factory Connection"), and Your Call Apparel and Distribution, LLC ("YCAD") are attached hereto as **Exhibit D.**

43.     Between May and August of 2012, Defendants sold approximately 7,711 Infringing Products to Hamrick's at a wholesale cost of between $11.95 and $13.00 per item, for distribution to Hamrick's twenty store locations in North Carolina, South Carolina, Georgia, Tennessee, and Virginia.

44.     Upon information and belief, in completing the sale of Infringing Products to Hamrick's, Hamrick's requested and Defendants complied with instructions to pack, ship, and invoice certain lots of Infringing Products for separate distribution to specific stores. Seven of these stores are located in North Carolina. True and correct copies of purchase orders issued by Hamrick's are attached hereto as **Exhibit E**, showing that on May 23, 2012 Hamrick's instructed that over 350 jackets be packed separately for its stores in Winston-Salem, NC (48 jackets), Greensboro, NC (66 jackets), Burlington, NC (36 jackets), Asheville, NC (66 jackets), Fayetteville, NC (48 jackets), Raleigh, NC (36 jackets), and Hickory, NC (66 jackets). True and correct copies of invoices issued by Defendants are attached hereto as **Exhibit F**, showing that on June 1, 2012 Defendants affirmatively and knowingly complied with Hamrick's instructions by packing, shipping, and invoicing the requested amounts of Infringing Products for separate distribution to, *inter alia*, Hamrick's stores in Winston-Salem, Greensboro, Burlington, Asheville, Fayetteville, and Hickory, North Carolina.

45.     Upon information and belief, as a direct result of Defendants' willful and knowing compliance with Hamrick's specific instructions, Defendants purposefully directed the sale of their Infringing Products into the State of North Carolina, with the actual

7645925

knowledge that such Infringing Products would be offered for sale and sold to consumers in this state.

46.     Between May and July of 2012, Defendants sold approximately 5,996 Infringing Products to Factory Connection at a wholesale cost of $13.00 per item, for distribution to Factory Connection's 260 store locations in Alabama, Arkansas, Georgia, Illinois, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Oklahoma, Tennessee, Texas, Virginia, and West Virginia.

47.     Between May and August of 2012, Defendants sold 2,259 Infringing Products to YCAD at a wholesale cost of $15.00 per item, which were distributed to 34 retail locations in Idaho, Wisconsin, Nebraska, Washington, North Dakota, South Dakota, Oregon, Iowa, Minnesota, and Vermont.

48.     Between September 26 and October 5, 2012, Defendants' Infringing Products were purchased from Hamrick's and Factory Connection stores. After confirming that the purchased specimens were in fact counterfeit, Plaintiffs requested and obtained the voluntary surrender of Hamrick's and Factory Connection's remaining inventories of approximately of 6,242 jackets. Subsequent assessment of the Infringing Products surrendered by Hamrick's and Factory Connection confirmed that the Infringing Products were in fact counterfeit. Specifically, among other things, the Infringing Products do not have the appropriate security tags used by Plaintiffs to identify authentic merchandise.

49.     Defendants' unauthorized and unlawful use of Counterfeit Marks in connection with the Infringing Products has caused, is causing and is likely to cause

confusion and to deceive the consuming public as to the source, origin, and/or sponsorship of the Infringing Products offered by Defendants. Defendants' actions are further likely to mislead the consuming public into believing that Defendants' Infringing Products originated from Plaintiffs or that there is some authorized connection between Plaintiffs and Defendants, thereby causing Plaintiffs irreparable harm.

50.    Defendants' actions have diluted, tarnished and otherwise injured the famous and distinctive The North Face Registered Trademarks owned by Plaintiffs, thereby causing Plaintiffs irreparable harm.

51.    Upon information and belief, Defendants willfully and knowingly violated and infringed Plaintiffs' valuable intellectual property rights, or alternatively Defendants acted with reckless disregard for and willful blindness to Plaintiffs' valuable intellectual property rights, with the express purpose of trading on the goodwill and reputation of The North Face Registered Trademarks. Upon further information and belief, Defendants engaged in the above-described illegal counterfeiting with the intention of deceiving and misleading customers for Defendants' own financial gain, and with the intention of diverting sales of genuine merchandise sold by Plaintiffs and its distributors.

52.    Upon information and belief, Defendants' Infringing Products and counterfeit marks are intentional copies of Plaintiffs' products and The North Face Registered Trademarks. Defendants' intentional copying presumptively establishes a likelihood of confusion between Plaintiffs' genuine products and the Infringing Products.

7645925

53.     Upon information and belief, Defendants are selling and offering for sale the Infringing Products bearing counterfeit marks, spurious designations and/or confusingly similar marks in order to trade on and capitalize upon the goodwill generated by Plaintiffs' extensive use, sales, advertising, and consumer acceptance and recognition of its protected trademarks and designs.

54.     Defendants have committed the tortious and infringing acts alleged herein without license or consent from Plaintiffs.

55.     By using counterfeit and infringing reproductions of The North Face Registered Trademarks on their goods, Defendants are trading on the goodwill and reputation of Plaintiffs and creating the false impression that Defendants' goods are affiliated with Plaintiffs and have thereby diluted, tarnished and blurred The North Face Registered Trademarks.

56.     Plaintiffs has suffered actual monetary damage as a result of Defendants' conduct and actions as described herein, including lost sales in the amount of at least $2,634,390.00, damage to Plaintiffs' commercial reputation, and dilution by tarnishment of Plaintiffs' famous The North Face Registered Trademarks.

57.     Defendants have been wrongfully and unjustly enriched through the unauthorized sale of Defendants' counterfeit, infringing, and dilutive products.

58.     Defendants' intentional conduct and business practices have also caused, and will continue to cause, irreparable harm for which there is no adequate remedy at law and for which Plaintiffs are entitled to injunctive relief and damages.

7645925

# COUNT I
## (Trademark Counterfeiting, 15 U.S.C. §§ 1114 & 1116)

59.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-58.

60.     Defendants, without authorization from Plaintiffs, have used and are continuing to use spurious designations that are identical to or substantially indistinguishable from The North Face Registered Trademarks.

61.     Upon information and belief, Defendants were aware of or purposefully contrived to avoid learning of the counterfeit nature of the Infringing Products.

62.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive consumers, the public, and the trade into believing that Defendants' Infringing Products are genuine or authorized products of Plaintiffs.

63.     Upon information and belief, Defendants have acted with knowledge of Plaintiffs' ownership of The North Face Registered Trademarks and with willful blindness of Plaintiffs' rights or with deliberate intention to unfairly benefit from the incalculable goodwill inherent in The North Face Registered Trademarks.

64.     Defendant' acts constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Section 34 of the Lanham Act, 15 U.S.C. § 1116.

65.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

7645925

66.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs has no adequate remedy at law.

## COUNT II
### (Trademark Infringement, 15 U.S.C. § 1114)

67.     Plaintiffs repeats and realleges the allegations set forth in paragraphs 1-66.

68.     Defendants, without authorization from Plaintiffs, have used and are continuing to use spurious designations that are confusingly similar to The North Face Registered Trademarks.

69.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' Infringing Products originate from, or are affiliated with, sponsored by, or endorsed by Plaintiffs.

70.     Upon information and belief, Defendants have acted with actual knowledge of Plaintiffs' ownership of The North Face Registered Trademarks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

71.     Defendants' acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

72.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

7645925

73.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs has no adequate remedy at law.

## COUNT III

### (False Designation of Origin and False Advertising, 15 U.S.C. § 1125(a))

74.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1-73.

75.     Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Infringing Products, together with Defendants' use of other indicia associated with Plaintiffs, is intended and is likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Infringing Products, and is intended to and is likely to cause such parties to erroneously believe that the Infringing Products have been authorized, sponsored, approved, endorsed or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

76.     The foregoing acts of Defendants constitute a false designation of origin, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

77.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

78.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs has no adequate remedy at law.

7645925

## COUNT IV
### (Trademark Dilution by Tarnishment, 15 U.S.C. § 1125(c))

79.     Plaintiffs repeats and realleges the allegations set forth in paragraphs 1-78

80.     The North Face Registered Trademarks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

81.     The North Face Registered Trademarks are famous within the meaning of Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)).

82.     Defendants' sale of the Infringing Products, without authorization from Plaintiffs, is diluting and tarnishing the distinctive quality of The North Face Registered Trademarks and are decreasing the capacity of such marks to identify and distinguish Plaintiffs products.

83.     Defendants' willful actions have diluted and tarnished the reputation and distinctive quality of the famous The North Face Registered Trademarks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

84.     Upon information and belief, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

85.     Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court. Defendants' acts have damaged and will continue to damage Plaintiffs, and Plaintiffs has no adequate remedy at law.

7645925

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants as follows:

A.     Finding that: (i) Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 34 of the Lanham Act (15 U.S.C. § 1116); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); and (ii) Defendants' actions were willful and done with actual knowledge of and intentional disregard for Plaintiffs' rights.

B.     Granting an injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116, preliminarily and permanently restraining and enjoining Defendants, their officers, agents, employees, and attorneys, and all those persons or entities in active concert or participation with them from:

1.     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any products which bear The North Face Registered Trademarks or any other mark or design element substantially similar or confusing thereto, including without limitation the Infringing Products, and engaging in any other activity constituting an infringement of any of Plaintiffs' rights in The North Face Registered Trademarks;

2.     engaging in any other activity constituting unfair competition with Plaintiffs, or acts and practices that deceive consumers, the public, and/or trade,

including without limitation, the use of designations and design elements associated with Plaintiffs; and

        3.      engaging in any other activity that will cause the distinctiveness of The North Face Registered Trademarks to be diluted, tarnished, or blurred.

    C.    Requiring Defendants to recall from any distributors or retailers and to deliver to Plaintiffs for destruction or other disposition all remaining inventory of all Infringing Products, including all advertisements, promotional and marketing materials therefore, as well as the means of making same;

    D.    Requiring Defendants to hand over to Plaintiffs any and all documents or information regarding the source, design, manufacture, importation, purchase, sale, or shipment of the Infringing Products, to include all communications, invoices, purchase orders, bank, payment or account records, receipts, acknowledgements, or other documents related to or referencing in any way the Infringing Products.

    E.    Requiring Defendants to file with this Court and serve on Plaintiffs within thirty days after entry of the injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

    F.    Directing such other relief as the Court may deem appropriate to prevent consumers, the public, and/or the trade from deriving any erroneous impression that any product at issue in this action which has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale, or sold by Defendants, has been authorized by Plaintiffs, or is related in any way with Plaintiffs and/or its products;

7645925

G. Awarding Plaintiffs the maximum amount of statutory damages of $12,000,000, or $2,000,000 per counterfeit mark per type of good, in accordance with Section 35(c) of the Lanham Act (15 U.S.C. § 1117(c));

H. Alternatively, ordering Defendants to account to and pay to Plaintiffs all profits realized by their wrongful acts and also awarding Plaintiffs its actual damages, and also directing that such profits and damages be trebled, in accordance with Section 35(b) of the Lanham Act (15 U.S.C. § 1117(b));

I. Awarding Plaintiffs its costs, attorneys fees, investigatory fees, and expenses to the full extent provided by Section 35 of the Lanham Act (15 U.S.C. § 1117), and to declare this an exceptional case within the meaning of the Lanham Act;

J. Awarding Plaintiffs prejudgment interest on any monetary award made part of the judgment against Defendant; and

K. Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

7645925

## TRIAL BY JURY IS REQUESTED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs requests a trial by jury of any issues so triable.

This the 28th day of March, 2013.

/s/ Stephen F. Shaw
Stephen F. Shaw (NCSB No. 41582)
Jack B. Hicks  (NCSB No. 14129)
Charles A. Burke (NCSB No. 19366)
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
One West Fourth Street
Winston-Salem, NC 27104
Telephone:     336-574-0852
Facsimile:     336-574-4521
E-Mail:        stshaw@wcsr.com
               jhicks@wcsr.com
               cburke@wcsr.com

*Attorneys for Plaintiffs The North Face Apparel Corp. and VF Outdoor, Inc.*

7645925